**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF SEIZURE OF ) | |
| ALL FUNDS ON DEPOSIT IN SUNTRUST ) | |
| ACCOUNT NUMBER XXXXXXXXX8359, IN ) | Civ. A. No. 05-2497 (RMC) |
| THE NAME OF GOLD AND SILVER ) | ECF |
| RESERVE, INC. AND ALL FUNDS ON ) | |
| DEPOSIT IN REGIONS BANK ACCOUNT ) | |
| NUMBER XX-XXXX-4851, ) | |
| IN THE NAME OF GOLD AND SILVER ) | |
| RESERVE, INC. ) | |
| _____ ) | |

**PLAINTIFF'S OPPOSITION TO CLAIMANT'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS, OR**
**IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Gold & Silver Reserve, Inc. d/b/a OmniPay (hereinafter "G&SR") has filed a Motion for

Judgment on the Pleadings, or, in the alterative, for summary judgment because, it asserts, it is

not an entity required to file reports under 31 U.S.C. § 5330. But to prevail here, G&SR must

establish that it has standing to claim all of the funds at issue and, furthermore, that it is not an

unlicensed money transmitter within the meaning of 18 U.S.C. § 1960 (not just under 31 U.S.C.

§ 5330). G&SR's motion fails to address these issues. G&SR does not appear to assert

ownership of all of the funds at issue and it fails to discuss all of the relevant provisions of the

applicable law. Moreover, G&SR cannot credibly maintain that no material facts are contested

while, at the same time, denying in its Answer almost every fact pled in the Verified Complaint.

Accordingly, G&SR's motion should be denied.

**I.     THE APPLICABLE STANDARDS**

    **A.     Motion for Judgment on the Pleadings.**

When a party moves for judgment on the pleadings under Fed. R. Civ. P.12(c), the Court

views the facts presented in the pleadings and the inferences that may be drawn from them in the

light most favorable to the opposing party and grants the motion only if the movant is entitled to judgment as a matter of law. Moore v. U.S., 213 F.3d 705, 713 (D.C. Cir. 2000) (quoting Peters v. National R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir.1992)). A court may award judgment on the pleadings under Rule 12(c) of the Federal Rules of the Civil Procedure only when it appears beyond doubt that there are no allegations in the complaint which, if proved, would provide grounds for relief. Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). In essence, the standard of review for such a motion is the same as the standard for a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). Id. Courts must accept all well-pleaded facts as true, giving the plaintiff the benefit of all reasonable inferences that may be drawn therefrom. Haynesworth, 820 F.2d at 1254; see Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In adjudicating a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a complaint must be construed in the light most favorable to the plaintiff. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As articulated in this Circuit, "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint: dismissal is inappropriate unless the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Conley v. Gibson, 355 U.S. at 45-46.). In reviewing the complaint, the court should "accept the plaintiff's factual allegations as true and construe the complaint 'liberally,' 'grant[ing] plaintiff the benefit of all inferences that can be derived from the facts alleged." Browning, 292 F.3d at 242 (quoting Kowal v. MCI Communications Corp, 6 F.3d 1271 (D.C. Cir. 1994)).

Moreover, in the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2002) ("CAFRA"), Congress enacted 18 U.S.C. § 983(3)(D), which provides that "no

complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(3)(D). As one court has held, reading this provision "in conjunction with the normal standard applied in considering a 12(b)(6) motion to dismiss can only lead one to the conclusion that CAFRA expresses Congress's intention to relax the 12(b)(6) standard of review" in civil forfeiture cases. United States v. 630 Ardmore Drive, et al., 178 F. Supp.2d 572, 581 (MDNC 2001). See also, All Funds on Deposit in Dime Savings Bank, 255 F. Supp.2d 56, 69 n. 20 (E.D.N.Y. 2003). Thus, in stark contrast to assertions made by Claimant's counsel (during the January 2006 hearing) that a forfeiture complaint must set forth probable cause and with some unspecified level of particularity, "there is no requirement that all of the facts and evidence at the government's disposal be pled in the complaint; the government must simply plead enough specific facts for the claimant to understand the government's theory, file a responsive pleading, and undertake [its] own investigation." Id. at 69 (citations omitted). See also, United States v. Funds in the Amount of $29,266.00, 96 F. Supp.2d 806, 810 (N.D. Ill. 2000) ("particularity requirement is satisfied when the complaint 'allege(s) facts tending to support the statutory forfeiture requirements' with the 'necessary details to allow the claimant to file a responsive pleading and undertake an investigation.") (citations omitted).

Indeed, even if a forfeiture complaint were to be found to lack sufficient particularity, the Government may amend it. See United States v. $59,074.00 in U.S. Currency, 959 F. Supp. 243, 251 (D.N.J. 1997); United States v. One Partially Assembled Drag Racer, 899 F. Supp. 1334, 1336 (D.N.J. 1995); United States v. All Funds on Deposit in Great Eastern Bank Account, 805 F. Supp. 444, 448 (E.D.N.Y. 1992).

B.    **Motion for Summary Judgment**

If matters outside the pleadings are presented and not excluded by the Court, the motion

should normally be treated as one for summary judgment.  See Fed. R. Civ. P. 12(c).  In that

case, the Court grants the motion only where it is clear that there are no genuine issues of

material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c);

Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1987); Petroleum Information Corp. v. U.S.

Department of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

G&SR is not entitled to judgment on the pleadings as a matter of law under Rule 12(c), or

for summary judgment under Rule 56.  Therefore, its motion should be denied.

II.    **ARGUMENT**

A.    **G&SR May Lack Standing to File its Dispositive Motion
Because It Is Not Clear That G&SR Even Claims All of the
Defendant Property At Issue.**

In this case, even though G&SR has moved for judgment in its favor, it is not clear that

G&SR asserts an interest in all of the defendant funds.  This is because, in each of the three

curious "Verified Statement[s] of Interest" that G&SR filed to establish its statutory standing to

defend against the forfeiture of the defendant properties, G&SR appears to say two things:  first,

G&SR seems to qualify its claim to portions of one defendant res – funds seized from an account

at Suntrust Bank; and second, G&SR makes no claim to the funds seized from Regions Bank (as

opposed to funds "on deposit" there).

Specifically, in "Verified Statement of Interest #1 of 3," G&SR says that it "makes claim

that *certain funds* seized from or on deposit in Suntrust Account Number [XXXXXXXXX]8359,

in the name of Gold & Silver Reserve, Inc. and all *or substantially all* funds on deposit in

4

Regions Bank Account Number [XX-XXXXX]4851, in the name of Gold & Silver Reserve, Inc.,

are the property of Gold & Silver Reserve, Inc., acquired through Gold & Silver Reserve, Inc.'s

legitimate and legal business dealings." See G&SR's Statement of Interest #1 (emphasis added).

In this first "Verified Claim," G&SR claims unspecified "certain funds" seized from the Suntrust

Account. G&SR does not clearly assert a claim to all funds seized from Suntrust Bank.

Moreover, whether by inadvertence or design, G&SR makes no claim to any of the funds seized

from the Regions Bank Account (but, apparently, a claim to "substantially all" funds on deposit

there). G&SR leaves the Government, and the Court, to guess as to what it does, or does not,

"own."

     The second and third "claims" G&SR files only further confuse ownership issues. In

"Verified Statement of Interest #2 of 3" and "Verified Statement of Interest #3 of 3," G&SR

parrots some of the language of claim #1, but in these claims it says its claims are made "in its

capacity as the obligor for the multitude of OmniPay users who are dependant on the liquidity of

the *res* of the bank accounts at issue[.]" These second and third claims, wherein G&SR says it is

"an obligor" to OmniPay's users appears to undermine G&SR's initial claim to ownership of

some unspecified portion of some of the defendant property identified in the Verified Complaint

as subject to forfeiture.

     These second and third claims are unconventional and they may prove significant to

G&SR's effort to secure standing to defend against (at least some portion of) the forfeiture here.

Normally, a money transmitter has standing to contest the forfeiture of funds seized from its bank

account because customers are deemed to have transferred title to the funds to the money

transmitter. See, e.g., United States v. All Funds on Deposit … in the Name of Kahn, 955 F.

Supp. 23 (E.D.N.Y. 1997) (customers who gave a money transmitter money to transfer to

relatives in Pakistan lacked standing to contest forfeiture of transmitter's bank accounts because

they had transferred title to the money to the money transmitter in much the same way as a

depositor transfers title to his money to his bank when he makes a deposit).  Thus, in such cases,

only the money transmitter (remitter) has standing to contest the forfeiture.  See United States v.

Cambio Exacto, S.A., 166 F.3d 522 (2d Cir. 1999) (money transmitter has standing to contest

forfeiture of funds in account in his own name).  But in this case, G&SR (and presumably

OmniPay), struggle to deny being in the money remitter business.  Contemporaneously, and

without further elucidation, G&SR "claims" to be an obligor.  If G&SR is not the owner of some

or all of the seized funds, but merely some sort of obligor who must ensure that funds are

returned "to the multitude of [unidentifed] OmniPay users[,]"  G&SR may lack standing to

contest at least some portion of the forfeiture case that it asks this Court (again) to dismiss.

G&SR's status as an obligor remains unclear at this stage of these proceedings.  Should the

evidence establish that G&SR is merely a bailee, however, courts generally permit a bailee to

contest a forfeiture of bailed funds only if the bailee establishes that the elements of bailment

under state law have been satisfied, and only where the bailee pleads bailment status and

identifies the bailor.  See United States v. $746,198 in U.S. Currency, 299 F. Supp.2d 923 (S.D.

Iowa 2004); United States v. Portrait of Wally, 2002 WL 553532 (S.D.N.Y. 2002).

        The Government recognizes that at the initial stages, a claimant's burden to establish

standing is not a heavy one and we are not moving to dismiss claimant's claim before asking

claimant to explain it.  But, at this point, it is not clear that claimant even has a right to ask for

the relief it requests.

**B.     G&SR's Motion for Judgment On the Pleadings Should Be
Denied Because G&SR Fails to Address the Relevant Law.**

G&SR's counsel has admitted (during the initial hearing held after the filing of this case) that G&SR operates without a license and in its recent pleading it acknowledges that 18 U.S.C. § 1960 prohibits the operation of unlicensed money transmitting businesses.  Nevertheless, says G&SR, it is entitled to judgment on the pleadings now, because, G&SR says, it is not a money transmitting business within the meaning of 31 U.S.C. § 5330.  But G&SR omits any discussion of the relevant law in its motion.

The defendant property is alleged to have been involved in an unlicensed money transmitting business in violation of 18 U.S.C. § 1960.  Title 18, United States Code, Section 1960 has its own definitional section and, in that section, Congress specified both:  (1) what it meant by "money transmitting" for purposes of Section 1960's prohibition; and (2) precisely what operating an "unlicensed money transmitting business" means for purposes of Title 18's prohibition.  See 18 U.S.C. §§ 1960(b)(1) and (b)(2).  G&SR would have this Court pretend that 18 U.S.C. § 1960(b) did not exist.

Although we are not asking the Court to decide at this stage, without the benefit of additional facts that we are entitled to pin down through discovery, whether G&SR does in fact operate unlawfully, G&SR (d/b/a OmniPay) does appear to qualify as a money transmitting business under 18 U.S.C. § 1960, because it engages as part of its business in the transmission of funds.

The relevant statute at issue, 18 U.S.C. § 1960, provides that:

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in

7

accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section-
(1) the term "unlicensed money transmitting business" means a money
transmitting business which affects interstate or foreign commerce in any manner
or degree and-

> (A) is operated without an appropriate money transmitting license in a
> State where such operation is punishable as a misdemeanor or a felony
> under State law, whether or not the defendant knew that the operation was
> required to be licensed or that the operation was so punishable;

> (B) fails to comply with the money transmitting business registration
> requirements under section 5330 of title 31, United States Code, or
> regulations prescribed under such section; or

> (C) otherwise involves the transportation or transmission of funds that are
> known to the defendant to have been derived from a criminal offense or
> are intended to be used to promote or support unlawful activity;

The term "money transmitting" is defined in 1960(b)(2) to include "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."  In the Verified Complaint, the Government alleges, among other things, that G&SR (doing business as OmniPay), converts customers funds into e-gold and also offers a bill payment service for its customers by which it transmits their funds by wire, or by sending checks, to its customers' creditors.  See Complaint ¶ 11.  Although claimant denies almost every other allegation (and yet asserts this case is somehow ripe for summary disposition), *claimant admits that it transmits its customers' money as part of its bill paying services*.  See Answer ¶¶ 11, 25.

Additionally, to the extent further definitions are needed, both Title 31 United States Code, Section 5330 and its implementing regulations, Title 31, Code of Federal Regulations, Section 103.11(uu), provide definitions of a "money transmitting business" under which

OmniPay would fall (through incorporation by 18 U.S.C. § 1960(b)(1)(B)).  Specifically, Title

31, United States Code, Section 5330(d)(1), defines a "money transmitting business" as including

> any business other than the United States Postal Service which – (A) provides
> check cashing, *currency exchange, or money transmitting or remittance services*,
> or issues or redeems money orders, travelers' checks, and other similar
> instruments or *any other person who engages as a business in the transmission of
> funds*, including any person who engages as a business in an informal money
> transfer system or any network of people who engage as a business in facilitating
> the transfer of money domestically or internationally outside of the conventional
> financial institutions system.

(emphasis added).  The term "money transmitting service" under Section 5330(d)(2) includes:

> accepting currency or funds denominated in the currency of any country and
> *transmitting the currency or funds, or the value of the currency or funds, by any
> means* through a financial agency or institution, a Federal reserve bank or other
> facility of the Board of Governors of the Federal Reserve System, *or an electronic
> funds transfer network*.

(emphasis added).

Notably, G&SR cites only to 18 U.S.C. § 5330(d)(1) in its brief, omitting (d)(2), above,

which provides in the broadest possible language that the transmission of even the value of

currency or funds, by any means, is considered to be money transmitting.

Further, Title 31, Code of Federal Regulations, Part 103.11(uu) defines "money services

businesses" as including the following six activities:

> (1) Currency dealer or exchanger. A currency dealer or exchanger (other than a
> person who does not exchange currency in an amount greater than $1,000 in
> currency or monetary or other instruments for any person on any day in one or
> more transactions).

> * * *

> (5) Money transmitter--(i) In general. Money transmitter:

> (A) Any person, whether or not licensed or required to be licensed,

9

who engages as a business in accepting currency, or funds denominated in currency, and transmits the currency or funds, or the value of the currency or funds, by any means through a financial agency or institution, a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both, or an electronic funds transfer network; or

(B) Any other person engaged as a business in the transfer of funds.

Again, OmniPay's activities, in that it accepts, facilitates, and conducts transfers by wires and other means of funds (national currency and digital currency), clearly fall within all of the applicable definitions of a "money transmitting business."[1] G&SR ignores these laws and

---

[1] Further, G&SR d/b/a OmniPay does not even address whether it falls under the relevant local statutes, including those referenced in the Verified Complaint. The District of Columbia and Florida require registration of money transmitters. The District of Columbia Money Transmitters Act, D.C. Stat. §§ 26-1001 - 26-1026, prohibits a person from engaging in the business of money transmission without obtaining a license from the Superintendent. D.C. Stat. § 26-1002. Violation of the money transmitter statute is a felony with penalties of up to a $25,000 fine and five years imprisonment. D.C. Stat. § 26-1023. Under the D.C. Money Transmitters Act, the term "money transmission" is defined as "the sale or issuance of payment instruments or engaging in the business of receiving money for transmission or transmitting money within the United States, or to locations abroad, by any and all means, including but not limited to payment instrument, wire, facsimile, or electronic transfer." D.C. Stat. § 26-1001(10).

Similarly, the Florida Money Transmitter's Code, Fla. Stat. §§ 560.101-560.408, prohibits a person from engaging in the business of a money transmitter without registering with the Office of Financial Regulation. Fla. Stat. § 560.125(1). Violation of the money transmitter statute is a felony. Specifically, the penalties for violating this statute are as follows: (1) if currency or payment instruments exceed $300, but are less than $20,000 in any 12-month period, the person has committed a third degree felony; (2) if currency or payment instruments total or exceed $20,000 but are less than $100,000 in any 12-month period, the person has committed a second degree felony; and (3) if currency or payment instruments total or exceed $100,000, the person has committed a first degree felony. Fla. Stat. § 560.125(5)(a)-(c).

Under Florida's Money Transmitter's Code, the term "money transmitter" includes any person located in or doing business in Florida who acts as a payment instrument seller, foreign currency exchanger, check casher, funds transmitter, or deferred presentment provider." Fla. Stat. § 560.103(11). The term "funds transmitter" includes "any person who engages in the

regulations, and appears hopeful that the Court will, too.

The only case authority G&SR offers for its suggestion that the Court should dismiss this case at this stage, because G&SR cannot possibly be in the money transmitting business, is United States v. 47 10-Ounce Gold Bars, et al., 2005 WL 221259, 2005 U.S. Dist. LEXIS 2906 (D. Or. 2005) (hereinafter "Crowne Gold"). But Crowne Gold offers claimant no support. In Crowne Gold, the court was addressing the Government's motion for summary judgment against gold and silver seized in Oregon. The court concluded that the evidence was not sufficient at the summary judgment stage to establish the defendant property's connection to the purported unlawful money transmitting activities, in part, because "Claimants Crowne Gold and Trainor assert that the United States has presented no evidence that Crowne Gold issued a debit card to anyone or transferred money from one client to another or to a third party." Id. at 6.

In this case, in contrast, claimant has conceded that as part of its business it either wires funds, or otherwise sends checks on behalf of its customers, to third parties. See Answer ¶¶ 11, 25. Moreover, the court in Crowne Gold concluded that "from the evidence in this record . . . there is at least a material issue of fact as to whether Crowne Gold operated a money transmitting business[.]" Id. This Court can properly address whether material fact issues remain to be resolved in this case after discovery reveals whether claimant did, in fact, have a proper basis to deny almost every assertion of fact made by the Government in its Verified Complaint. But G&SR's blanket denials in no way support the relief it requests.

---

receipt of currency or payment instruments for the purpose of transmission by any means, including transmissions within this country or to or from locations outside this country, by wire, facsimile, electronic transfer, courier, or otherwise." Fla. Stat. § 560.103(10).

**C.    G&SR's Motion for Summary Judgment Should Be Denied Because It Has Not Established The Absence of Disputed Material Facts.**

In its Verified Complaint, the Government describes in detail how it understands the defendant funds to have been used (or to have been intended for use), and how such use or intended use would violate the provisions of 18 U.S.C. § 1960. In its Answer, claimant denies that the funds were to be used in violation of law, and even denies knowing much at all about how e-gold operates. Through such denials, G&SR establishes only that many of the material facts that it would have to establish as uncontested before this case could be deemed ripe for summary disposition in its favor are, currently, contested. See Answer ¶¶ 6-28 (where claimant generally "[d]enies for lack of knowledge or information" almost every paragraph of the Verified Complaint). Claimant's failure to submit a "Statement of Uncontested Material Facts" may be consistent with its effort to deny facts that it is in the best position to know, but not in accordance with this Court's standards for entertaining motions for summary judgment. See Local Rule 56.1. Indeed, G&SR offers no evidentiary support for its bald assertion that it is not operating its business in violation of 18 U.S.C. § 1960, and no legal support for its assertion, again, that this case should end before any more facts are revealed.

## III.    CONCLUSION

For the foregoing reasons, the United States respectfully submits that G&SR's motion should be DENIED.

Respectfully submitted,

_/s/_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

_/s/_____

WILLIAM R. COWDEN, DC Bar # 426301
Assistant United States Attorney


_/s/_____

LAUREL LOOMIS RIMON
Assistant United States Attorney
U.S. Attorney's Office
Criminal Division
District of Columbia
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 307-0258


_/s/_____

KIMBERLY KIEFER PERETTI, DC Bar #458726
Senior Counsel
U.S. Department of Justice
Computer Crime and Intellectual Property Section
Criminal Division
1301 New York Ave., NW, Suite 600
Washington, D.C. 20530
(202) 353-4249

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing Opposition to be served by means of the Court's ECF system on this 30th day of January, 2006 upon claimant's counsel of record:

Mitchell S. Fuerst, Esq.
Andrew S. Ittleman, Esq.
Rodriquez O'Donnel Ross Fuerst
Gonzalez Williams & England, P.C.
1001 Brickell Bay Drive, Suite 2002
Miami, FL 33131
Fax: (202) 293-3307

_/s/_____
William R. Cowden

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN THE MATTER OF SEIZURE OF | ) | |
| ALL FUNDS ON DEPOSIT IN SUNTRUST | ) | |
| ACCOUNT NUMBER XXXXXXXXX8359, IN | ) | **Civ. A. No. 05-2497 (RMC)** |
| THE NAME OF GOLD AND SILVER | ) | ECF |
| RESERVE, INC. AND ALL FUNDS ON | ) | |
| DEPOSIT IN REGIONS BANK ACCOUNT | ) | |
| NUMBER XX-XXXX-4851, | ) | |
| IN THE NAME OF GOLD AND SILVER | ) | |
| RESERVE, INC. | ) | |
| _____ | ) | |

**O R D E R**

Upon consideration of claimant's Motion for Judgment on the Pleadings, the Opposition

thereto, and the entire record herein, it is this _____ day of _____, 2006

HEREBY Ordered that claimant's motion is DENIED.


_____
        ROSEMARY M. COLLYER
        United States District Judge