UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| c/o United States Attorney's Office | : | |
| Judiciary Center Building | : | |
| 555 4th Street, N.W. | : | |
| Washington, D.C. 20530 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 1:05CV02497 |
| ALL FUNDS SEIZED FROM OR | : | Before the Honorable |
| ON DEPOSIT IN SUNTRUST | : | Rosemary M. Collyer |
| ACCOUNT NUMBER 1000028078359, | : | |
| IN THE NAME OF GOLD AND | : | |
| SILVER RESERVE, INC. AND ALL | : | |
| FUNDS ON DEPOSIT IN REGIONS | : | |
| BANK ACCOUNT NUMBER | : | |
| 67-0919-4851, IN THE NAME OF | : | |
| GOLD AND SILVER RESERVE, INC. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**CLAIMANT GOLD & SILVER RESERVE, INC.'s REPLY TO PLAINTIFF'S OPPOSITION TO CLAIMANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND REQUEST FOR AN ORAL HEARING ON THE MATTER**

COMES NOW, the Claimant, GOLD & SILVER RESERVE, INC. (G&SR), by and through its undersigned counsel, and replies to the Plaintiff's opposition to G&SR's motion for judgment on the pleadings, or in the alternative, for summary judgment. In support of this reply, undersigned counsel states as follows:

**A.   The Claimant's has standing to challenge the forfeiture in this case**

**1.   Explanation of the Claimant's verified statements of interest**

The Claimant's three statements of interest are not nearly as complicated as the Plaintiff has presented them to be in its opposition to the Claimant's motion for judgment

on the pleadings (hereinafter, "the Plaintiff's opposition"). Three statements of interest, however, were necessary because the Claimant has three separate interests in the contents of its bank accounts.

The Claimant's first interest was elucidated in its first statement of interest. In that statement, the Claimant claimed only those funds which are the Claimant's actual property, "acquired through Gold & Silver Reserve, Inc.'s legitimate and legal business dealings." In other words, through its first statement of interest, the Claimant claimed its own money.

The Claimant's second interest was elucidated in its second statement of interest. In that statement, the Claimant claimed only those funds which, at the time of the freeze order entered by Magistrate Judge Facciola in Case No. 05-664 M-01 (JMF) (Under Seal), the Claimant held as *an obligor* for certain OmniPay users. In other words, this interest represents the Claimant's responsibility to OmniPay users of ensuring that the checks drafted against the bank accounts at issue in this case are honored.

The Claimant's third interest was elucidated in its third statement of interest and has a "transactional" relationship with its second interest. In the third statement, the Claimant claimed only those funds which, at the time of the freeze order entered by Magistrate Judge Facciola in Case No. 05-664 M-01 (JMF) (Under Seal), the Claimant held as an obligor for the obligees of the OmniPay users indicated in the Claimant's second statement of interest. In other words, this interest represents the Claimant's responsibility to ensure that OmniPay users' obligees receive the value of checks drafted against the Claimant's bank accounts by the Claimant on behalf of OmniPay users.

In sum, the Claimant provided this Court with three verified statements of interest because it has three separate – albeit related – interests in its bank accounts. None of the individual statements of interest alone suffices to explain the Claimant's standing in this action; however, when the three statements are viewed together, the Claimant's standing becomes clear.

**2.     Explanation of the Claimant's standing**

In its opposition, prior to requesting an explanation from the Claimant regarding the Claimant's "unconventional" verified statements of interest, the Plaintiff raises the issue of – but files no motion actually based upon – the Claimant's standing to contest the forfeiture in this case. In so doing, the Plaintiff has attempted to pin the Claimant into a corner. On the one hand, the Plaintiff recognizes that a money transmitter has standing to contest a forfeiture; *citing*, *United States v. Cambio Exacto*, *S.A.*, 166 F.3d 522 (2d Cir. 1999). Of course, if the Claimant attempted to obtain standing in such a fashion, it would be forced to admit that it is a money transmitter. On the other hand, according to the Plaintiff, if the Claimant is not a money transmitter then the Claimant must be either **a)** "some sort of obligor" with questionable standing in this action, or **b)** a "bailee" which can only have standing under certain circumstances which are inapplicable to the Claimant's business. The Plaintiff fails to recognize that based on the actual nature of the Claimant's business, and because the Claimant is not in the money transmitting business, this is a case of first impression. The question of the Claimant's standing is therefore also a matter of first impression.

Regardless of the uniqueness of this case and the Claimant's business, the Claimant's assertions of interest are sufficient to confer standing upon the Claimant. "In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items. This interest need not be an ownership interest; it can be any type of interest, including a possessory interest." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994) (acknowledging standing for a Claimant arrested in airport carrying $191,910 in cash: "where a claimant asserts a *possessory interest* and provides some explanation of it (e.g., that he is holding the item for a friend), he will have standing"); *citing*, *United States v. 1982 Sanger 24' Spectra Boat,* 738 F.2d 1043, 1046 (9th Cir. 1984) ("It is not necessary therefore that a claimant under the forfeiture statute allege ownership. A lesser property interest such as possession creates standing.") *See also*, *United States v. $321,470.00, United States Currency*, 874 F.2d 298, 304 (5th Cir. 1989) ("No one can question the standing of a bailee or agent to attack a forfeiture of

property subject to a lawful or even colorably lawful bailment or agency. An armored car service, a commercial delivery company, and attorney carrying his client's papers need have no qualms about this case.")

Although the Claimant is not a bailee, it nevertheless has standing in this case. According to the Black's Law Dictionary, a bailee is "one to whom **goods** are bailed; one to whom **goods** are entrusted by a bailor; the party to whom **personal property** is delivered under a contract of bailment. **A species of agent to whom something movable is committed in trust for another.**" Black's Law Dictionary, 141 (6th ed. 1991); [Emphasis added]; *citing, Smith v. State*, 148 P.2d 206, 208. The Claimant is not a bailee because it does not "bail" anything: the Claimant does not hold goods or any other movable property and, in fact, does not even hold value on account for anyone.

Rather, as indicated in the Claimant's statements of interest, the Claimant serves as an obligor, and to understand that concept is to understand the Claimant's business. An obligor, according to Black's, is "a promisor. The person who has engaged to perform some obligation. Person obligated under a contract or bond." Black's Law Dictionary, 107 (6th ed. 1991). The Claimant in this case, Gold & Silver Reserve, Inc. d/b/a OmniPay, is the primary dealer of e-gold and is engaged by its clients to perform transactions with them. In short, when a client desires to purchase e-gold, that client wires money to the Claimant and receives e-gold in exchange. If a client chooses to sell e-gold, that client "clicks" e-gold over to the Claimant and receives a wire in exchange. The money currently under arrest in this case is Gold & Silver Reserve, Inc.'s, to be used to complete these exchange operations. Such is the basis of the Claimant's standing.

    B.    **The Claimant's 12(c) motion most certainly addressed the "relevant law" and should be granted because it highlighted the Plaintiff's inability to adequately plead a violation of 18 U.S.C. § 1960.**

The Claimant concedes, acknowledges, admits and understands that the Plaintiff has filed this action under the theory that the Claimant has allegedly acted as an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. The claimant additionally concedes, acknowledges, admits and understands that – as the Plaintiff aptly

4

RODRIGUEZ O'DONNELL ROSS FUERST GONZALEZ WILLIAMS & ENGLAND, P.C.
TWENTY ZERO TWO ♦ 1001 BRICKELL BAY DRIVE ♦ MIAMI  FLORIDA 33131
PHONE 305-350-5690 ♦ FAX 305-371-8989 ♦ E-MAIL mfuerst@rorfgw.

noted in its Opposition – that § 1960 "has its own definitional section, and, in that section, Congress specified both (1) what it meant by '**money transmitting**' for purposes of Section 1960's prohibition; and (2) precisely what operating an '**unlicensed money transmitting business**' means for purposes of Title 18's prohibition." *See*, Plaintiff's Opposition, at p.7; [Emphasis added]. There can be no question that § 1960 defines the terms "unlicensed money transmitting business" and "money transmitting." However, the definition of "**money transmitting business**" is located in 31 U.S.C. § 5330.

In short, the Claimant's 12(c) motion is premised on the idea that no business can be an "*unlicensed* money transmitting business" without first being a "money transmitting business." 31 U.S.C. § 5330(d)(1) defines the term "money transmitting business" as follows:

> (1) Money transmitting business. The term "money transmitting business" means any business other than the United States Postal Service which –
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
> (B) is required to file reports under [31 USCS § 5313]; **and**
> (C) is not a depository institution (as defined in [31 USCS § 5313(g)]).

[Emphasis added].

§ 5330 is the only location in the Federal statutes where the definition of "money transmitting business" is found. Indeed, while § 1960 certainly contains its own definitional section, that definitional section necessarily relies on § 5330 to be complete. To be sure, as the Plaintiff noted in its opposition, § 1960(b)(1) provides the definition of "unlicensed money transmitting business." However, that definition provides that an "'unlicensed money transmitting business' means **a money transmitting business** which affects interstate commerce…" As such, **no business can be defined as an unlicensed**

5

RODRIGUEZ O'DONNELL ROSS FUERST GONZALEZ WILLIAMS & ENGLAND, P.C.
TWENTY ZERO TWO ♦ 1001 BRICKELL BAY DRIVE ♦ MIAMI FLORIDA 33131
PHONE 305-350-5690 ♦ FAX 305-371-8989 ♦ E-MAIL mfuerst@rorfgw.

**money transmitting business without *first* being defined as a money transmitting business.**

The Plaintiff, in contrast, seeks to define the Claimant as an "unlicensed money transmitting business" by citing to the definitions of "unlicensed money transmitting business," "money transmitting service" and "money services businesses" contained in the United States Code and the Code of Federal Regulations. While certain aspects of these definitions appropriately describe some of the Claimant's business activities, none serves to define the Claimant as a "money transmitting business." Again, that definition is found **only** in 31 C.F.R. § 5330, and it does not apply to the Claimant because the Claimant – who neither accepts nor transmits currency – is not required to file *currency* transaction reports under 31 U.S.C. §§ 5312 and 5313.[1] The Plaintiff *circles* its target, but a direct hit in this case is impossible.

As stated by the Court in *United States v. 47 10-Ounce Gold Bars*, *et al.*, 2005 U.S. Dist. LEXIS 2906, 16 (D. Or. 2005), "[m]any businesses receive and transmit funds as payment as a part of their business." Not all of those businesses, however, are in the business of transmitting money; *see also, United States v. Cambio Exacto, S.A.*, *et al.*, 166 F.3d 522, 524-525 (2nd Cir. 1999):

> **A money transmitter, as the name rather strongly implies, is in the business of sending money**: collecting it from customers and, for a commission, delivering it to a designated recipient, typically in another country. **Money transmitters rely on independent agents at both ends of each transaction. Customers give local agents the money**

---

[1] Although e-gold is, perhaps, a *de facto* currency, it is neither recognized nor regulated by Federal law. 31 C.F.R. 103.11(h) defines "currency" as "[t]he coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance. Currency includes U.S. silver certificates, U.S. notes and Federal Reserve notes. Currency also includes official foreign bank notes that are customarily used and accepted as medium of exchange in a foreign currency." *See also*, Department of the Treasury, *Money Laundering Threat Assessment*, December 2005, p.25, n.63 ("Currency is something monetized by a monetizing authority, generally central banks.") Consequently, Plaintiff's efforts to prosecute the Claimant under statutes regulating traditional currency transactions are amiss

>   **they want sent; the agents then notify the money transmitter of the transaction and deposit the funds to be transferred to the transmitter's bank account.** Similarly, to physically turn over the funds to the recipient, money transmitters use entities doing business in the recipient's vicinity. When performing that function, they are known as correspondents. To expedite the delivery process, correspondents sometimes distribute funds to the recipients before the amount actually arrives from the money transmitter.

[Emphasis added].

In this case, the Claimant is not a money transmitting business and does not purport to be a money transmitting business. The statutes and regulations available to the Plaintiff in this case fail to characterize the Claimant as a money transmitting business. The Claimant's business is not to "facilitate the transfer of money domestically or internationally outside of the conventional financial institutions system." 31 U.S.C. § 5330. Rather, Gold & Silver Reserve, Inc.'s business is to facilitate the operation of e-gold, Ltd. which allows people to obtain an ownership interest in gold – and only then, if the owner so chooses – transfer that ownership interest (or portions thereof) to others. Gold & Silver Reserve, Inc. merely affords people the opportunity to buy e-gold, a liability of e-gold, Ltd. representing the value of an amount of gold bullion which is always owned by and titled to the e-gold Bullion Reserve Special Purpose Trust.[2] Gold & Silver Reserve, Inc. does not deal in cash or cash-equivalents, and does not sell money orders or send money by wire. Gold & Silver Reserve, Inc. has never operated an

---

[2] Attached hereto as Exhibit 1 is FinCEN Form 107, the form that all money service businesses are required to complete and submit to the Treasury Department within 180 days after the date the business is established. That form provides, on the "General Information" page immediately following the registration form, that "acceptance and transmission of funds as an integral part of the execution and settlement of a transaction other than the funds transmission itself (for example, in connection with the bona fide sale of securities) will not cause a person to be a money transmitter." The Claimant, not unlike the securities seller, accepts and transmits funds *only as* an integral part of its purchase and sale of e-gold. It is not a money transmitter because it does not engage as a business in the transfer of funds; *see also*, 31 C.F.R. 103.11(uu)(5)(ii).

Civil Action No. 1:05CV02497

unlicensed or otherwise illegal money transmitting business, because Gold & Silver Reserve, Inc. was not operating a money transmitting business in the first place.

WHEREFORE, for the foregoing reasons, the Claimant, GOLD & SILVER RESERVE, INC., respectfully requests that this Court dismiss the forfeiture complaint in this case and hold an oral hearing on the matter.

Respectfully submitted,

/s/ *Andrew S. Ittleman*
Mitchell S. Fuerst, Esq.
Florida Bar No. 264598
Andrew S. Ittleman, Esq.
Florida Bar No. 802441
Rodriguez O'Donnell Ross Fuerst
 Gonzalez Williams & England, P.C.
1001 Brickell Bay Drive, Suite 2002
Miami, FL  33131
305-350-5690 (o)
305-371-8989 (f)
Carlos Rodriguez, Esq.
District of Columbia Bar No. 935692
1211 Connecticut Ave. N.W., Suite 800
Washington, DC 20036
(202) 293-3300 (o)
(202) 293-3307 (f)

Civil Action No. 1:05CV02497

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing

**CLAIMANT GOLD & SILVER RESERVE, INC.'s REPLY TO PLAINTIFF'S OPPOSITION TO CLAIMANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND REQUEST FOR AN ORAL HEARING ON THE MATTER**

was served on February 6, 2006 by email on John Roth, Esq. (john.roth2@usdoj.gov), Chief, Fraud & Public Corruption Section of the United States Attorney's Office in Washington, D.C. and Assistant United States Attorney Bill Cowden (william.cowden@usdoj.gov).

/s/ Andrew S. Ittleman
Mitchell S. Fuerst, Esq.
Florida Bar No. 264598
Andrew S. Ittleman, Esq.
Florida Bar No. 802441
Rodriguez O'Donnell Ross Fuerst
 Gonzalez Williams & England, P.C.
1001 Brickell Bay Drive, Suite 2002
Miami, FL  33131
(305) 350-5690 (o)
(305) 371-8989 (f)