UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : <br>    c/o United States Attorney's Office : <br>    Judiciary Center Building : <br>    555 4th Street, N.W. : <br>    Washington, D.C. 20530 : <br>                           : <br>       Plaintiff, : <br>                           : <br>    v. : <br>                           : <br> ALL FUNDS SEIZED FROM OR : <br> ON DEPOSIT IN SUNTRUST : <br> ACCOUNT NUMBER 1000028078359, : <br> IN THE NAME OF GOLD AND : <br> SILVER RESERVE, INC. AND ALL : <br> FUNDS ON DEPOSIT IN REGIONS : <br> BANK ACCOUNT NUMBER : <br> 67-0919-4851, IN THE NAME OF : <br> GOLD AND SILVER RESERVE, INC. : <br>                           : <br>       Defendants. : <br> _____: <br>                           : <br> Gold & Silver Reserve, Inc. d/b/a/ : <br>    Omnipay, : <br>       Claimant. : <br> _____: | Civil Action No. 1:05CV02497 <br> Before the Honorable <br> Rosemary M. Collyer |

**CLAIMANT'S OBJECTION TO PLAINTIFF'S MOTION FOR STAY**

      COMES NOW the Claimant, GOLD & SILVER RESERVE, INC., by and through undersigned counsel and files this objection to Plaintiff's motion for stay. In support of this motion, undersigned counsel states as follows:

      1.    On December 16, 2005, the Government executed a search warrant at the offices of Gold & Silver Reserve, Inc. (G&SR) and a freeze over G&SR's bank accounts. Immediately following the warrant and freeze, the Claimant moved Magistrate Judge Facciola (the signatory of the freeze order) to release the freeze. The parties appeared before the magistrate on December 29, 2005.

2. Although Magistrate Judge Facciola ruled that he lacked the jurisdiction to grant the motion, he indicated orally and in writing that he was "troubled" by the Government's conduct prior to his signing of the freeze order.[1] In short, according to the magistrate, he signed the freeze order because he was persuaded by the Secret Service special agent who made the application that **a)** the Claimant was in the business of selling child pornography, and **b)** no third parties would be injured as a result of the freeze. Both statements were patently false and the magistrate knew it and said that he knew it.[2] Magistrate Judge Facciola's final action relevant to this case was to refer it to Chief Judge Hogan.

3. However, before the magistrate entered his order on the Claimant's emergency petition to release the freeze, the Government executed its warrant of arrest *in rem* and filed its verified complaint for forfeiture *in rem* on December 30, 2005.[3] Thus, the matter arrived in this Court, where the Government conceded to the release of the freeze in favor of the arrest of the subject funds.

4. The Government, via its motion to stay this case, has once again slipped behind the veil of the most convenient available procedure in an effort to avoid litigating the § 1960 issue. All the Claimant asks for is one fair chance to litigate whether the Claimant is a money transmitting business within the statutory scheme defining that term. The Government is simply unwilling to let that happen.

---

[1] The recording of that hearing was unsealed per order of Chief Judge Hogan on August 28, 2006. Such recording is currently being transcribed and will be made available to this Court in a timely fashion.

[2] Prior to the conclusion of the December 29, 2005 hearing, Magistrate Judge Facciola – in open court and visible to all persons in attendance – sealed into a manila envelope one or more written statements which he indicated to be the most troublesome. Despite the unsealing of the case, those statements remain sealed.

[3] The Government did not notice the Claimant of the arrest until January 4, 2006. When the Claimant finally received a copy of the forfeiture complaint, the Claimant discovered that some of the most offensive language used in the application for the freeze did not make it into the forfeiture complaint. Indeed, in support of the application for the freeze, the Government gladly informed the magistrate that there was "no economically sound reason for using e-gold to make funds transfers or payments other than to avoid reporting requirements." *See,* Application for Freeze, at p.10, ¶ 21. However, following the hearing before the magistrate, it came as no surprise when such language was nowhere to be found in the forfeiture complaint.

  5. The facts leading up to the Government's motion for a stay began on June 16, 2006. On that date, counsel for the Government (AUSA William R. Cowden) spoke with undersigned counsel in two related telephone conversations. Mr. Cowden expressed that it was his intention to move to stay the forfeiture action, but that it was also his desire to settle the dispute between the parties. Accordingly, Mr. Cowden, with the agreement of undersigned counsel, called for a July 5, 2006 settlement conference. At that conference, undersigned counsel and counsel for the Government would discuss the following two issues:

    a. How could G&SR embolden its anti-money laundering capabilities?

    b. How could the parties reach an understanding as to the 18 U.S.C. § 1960 issue?

  6. On July 5, 2006, at the Office of the United States Attorney for the District of Columbia, pursuant to Mr. Cowden's invitation, undersigned counsel (Mitchell S. Fuerst, Esq. and Andrew Ittleman, Esq.) met with counsel for the Government (AUSAs Laurel Loomis Rimon, William R. Cowden and Kimberly Kiefer Peretti), together with a collection of agents and special agents from IRS, Secret Service, FBI and several other agencies.

  7. The July 5 settlement conference lasted roughly four (4) hours. During that meeting, undersigned counsel and counsel for the Government discussed both issues that Mr. Cowden invited undersigned counsel to his office to discuss. However, before that discussion took place, Ms. Rimon informed undersigned counsel that the Grand Jury was actively investigating whether G&SR and its directors had – with actual knowledge – violated 18 U.S.C. § 1956.

  8. The July 5 settlement conference ended with no settlement in place. Counsel for G&SR and counsel for the Government did, however, agree to keep their dialogue open. Consistent with that agreement, the July 5 settlement conference spilled into July 7 when, at or about 9:00 a.m., counsel for the Government (Ms. Rimon and Mr. Cowden) telephoned Mr. Fuerst and engaged him in conversation concerning these related cases.

  9. Despite the parties' efforts to resolve their differences, the parties did not resolve anything. Accordingly, in an effort to progress this case without infringing on the

ongoing Grand Jury investigation, the parties chose to draft a stipulation of facts which would allow the Claimant to move to dismiss this case.

10. Undersigned counsel immediately set about preparing a mutually agreeable stipulation and forwarded it to the Government on July 21, 2006. The first proposed stipulation is attached hereto as Exhibit 1.

11. The first proposed stipulation was an accurate depiction of the Claimant's business activities. The stipulation described e-gold, the business activities of e-gold, Ltd. and Gold & Silver Reserve, Inc., and the ways that customers may use the services of both companies. Undersigned counsel attempted to describe all of this in a hypothetical where a physician accepted e-gold as payment for his medical services, and then exchanged that e-gold for a check or a wire using the services of an independent e-gold exchange service such as Gold & Silver Reserve, Inc.; *see*, Proposed Stipulation, ¶¶ 6 – 11.

12. On August 15, 2006, counsel for the Government telephoned undersigned counsel to discuss the proposed stipulation. First, counsel for the Government explained that the hypothetical was inaccurate because he was unaware of any physicians who were willing to accept e-gold as payment for their medical services. A more appropriate hypothetical, according to counsel for the Government, would involve e-gold moving across international borders. Second, counsel for the Government explained that the phrase "independent e-gold exchange service" was inaccurate because e-gold, Ltd. profited from each exchange service's transactions.

13. Counsel for the Government also articulated that the stipulation should track the language of 18 U.S.C. § 1960. In other words, counsel for the Government stated that the stipulation should provide that Gold & Silver Reserve, Inc. "transfers funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." *See*, 18 U.S.C. § 1960(b)(2).

14. For all of these reasons, and because counsel for the Government also explained that he had no means of discovering evidence short of deposing at least one of the directors of Gold & Silver Reserve, Inc., counsel for the Government explained that it

was his desire to file a motion to stay the case and requested that undersigned counsel not oppose that motion.

15. Undersigned counsel refused to consent to the Government's motion and requested that counsel for the Government allow undersigned counsel to prepare a second proposed stipulation. Counsel for the Government permitted undersigned counsel to do so. Undersigned counsel also refused to incorporate the exact language of § 1960 into the stipulation because – as undersigned counsel stated – the stipulation was an improper forum for legal conclusions. In other words, while undersigned counsel was willing to stipulate to facts describing how the claimant's business operates, undersigned counsel would not usurp the Court's authority to resolve legal arguments.

16. Undersigned counsel forwarded the second proposed stipulation to the Government on August 21, 2006. The second proposed stipulation is attached hereto as Exhibit 2.

17. The second proposed stipulation is no less accurate than the first, but it takes into account the Government's comments about the original hypothetical and the phrase "independent e-gold exchange service." Accordingly, the second proposed stipulation describes the purchase of a watch from a Swiss watchmaker by an Argentinean national.

18. On August 23, 2006, counsel for the Government emailed undersigned counsel and expressed his feelings about the second proposed stipulation. (Counsel for the Government's email is attached hereto as Exhibit 3.) According to counsel for the Government, "these stipulations do not accurately reflect the extent of G&SR's operation of the e-gold system and how the network operates, and they continue to pose useless hypotheticals." However, rather than allowing undersigned counsel the opportunity to discuss the issue with him and draft another proposed stipulation, counsel for the government filed his motion to stay only two hours later.

19. The Claimant vehemently objects to the Government's motion for several reasons.

20. First of all, it was clearly premeditated, and undersigned counsel resents having been strung along since July when counsel for the Government originally indicated his desire to move for a stay. Moreover, undersigned counsel resents the

Government's exploitation of this forfeiture case and the settlement negotiation process as means of discovery in the Grand Jury investigation.

21. To be sure, the above-mentioned July 5 settlement conference is currently the subject of a motion to quash before Chief Judge Hogan. In that motion, the Claimant has moved to quash a Grand Jury subpoena directed to a set of papers compiled by undersigned counsel in preparation for the settlement conference and discussed by undersigned counsel while settlement negotiations were underway.

22. In this case, what is most important about that motion to quash is <u>not</u> the group of papers that the claimant has moved to quash. Rather, the facts underlying the motion to quash reveal a very curious process on the part of the Assistant United States Attorneys prosecuting these intertwined cases. Indeed, as previously stated, the July 5 settlement conference was called by Mr. Cowden as an alternative to a stay of the forfeiture case. Only days after the settlement conference had concluded, however, the Grand Jury subpoenaed a collection of documents the existence of which was disclosed by undersigned counsel during the settlement conference.

23. In other words, viewing the past three months with the benefit of hindsight, it becomes plain that it has been the Government's desire since June to stay the forfeiture case, but it has chosen to wait until now because its foremost desire has been to use this case as a means of discovery in the Grand Jury investigation. Now, having milked that procedure for all its worth, the Government is now ready to abandon the forfeiture action altogether.

24. The Claimant also objects to the Government's motion because it is totally unnecessary.

25. Indeed, as undersigned counsel has stated to counsel for the Government on numerous occasions, the Claimant's defense in this case is not complicated and it has not changed since the claimant learned in December of 2005 that it was facing § 1960 charges. To be sure, while § 1960 provides that "[w]hoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an **unlicensed money transmitting business**, shall be fined in accordance with this title or imprisoned not more than 5 years, or both," 31 U.S.C. § 5330 provides the only definition of **"money**

6

**transmitting business"** available in the Federal statutes. That definition provides as follows:

> (1) Money transmitting business. The term "money transmitting business" means any business other than the United States Postal Service which –
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
> (B) is required to file reports under [31 USCS § 5313]; and
> (C) is not a depository institution (as defined in [31 USCS § 5313(g)]).

26. Since the inception of this case – and most notably in the Claimant's 12(c) motion – the Claimant has consistently argued that because it cannot be classified as a "money transmitting business" under § 5330, it cannot be classified as an "unlicensed money transmitting business" under § 1960.

27. However, in this Court's March 17, 2006 order [DE 21] denying the claimant's 12(c) motion, this Court held that "even under its preferred construction of the statutory scheme, about which the court expresses no opinion, GSR faces exposure under 18 U.S.C. § 1960, and is thus susceptible to a civil forfeiture action under 18 U.S.C. § 981, if it is required to file reports under 31 U.S.C. § 5313. **Whether GSR is required to file reports under 31 U.S.C. § 5313 is a question that is heavily fact dependent**." *Id.,* at 2; [Emphasis added].

28. Accordingly, since that time, it has been the Claimant's desire to provide this Court with the evidence necessary to rule on the Claimant's motion. It has also been the Claimant's desire to supplement its primary argument with an additional argument based on the unconstitutional vagueness of the statutory scheme *as it applies* to a business which does not accept cash or currency. Undersigned counsel has discussed both of those arguments with counsel for the Government.

29. Ultimately, while the Claimant is prepared to re-argue the law supporting its 12(c) motion and to supplement that motion with a constitutional vagueness argument,

7

the Claimant cannot yet do so. Indeed, should the Claimant choose to move this Court to dismiss this case with no evidence, such motion would be denied and undersigned counsel would undoubtedly face sanctions.

30. Therefore, in light of the fact that Fifth Amendment and 6(e) considerations abound in this case, a stipulation would undoubtedly be the most appropriate way for the parties to present evidence to this Court. The stipulation would allow the parties to amass evidence without causing any person under investigation to waive his Fifth Amendment rights, and it would also allow the Government to preserve the secrecy of the Grand Jury investigation. However, the Government's unwillingness to negotiate the terms of the stipulation makes the preparation of a stipulation impossible. (It also sheds light on the premeditated nature of the Government's motion to stay.)

31. Furthermore, the Government's boilerplate memorandum of law fails to consider the procedural posture of this case. To be sure, the Government cites *United States v. One Assortment of 73 Firearms*, 352 F.Supp.2d 2 (D.Me.2005) and *United States v. All Funds…*, 162 F.Supp.2d 1325 (D.Wyo.2001) to support the propositions that **a)** the Government cannot proceed if the Claimant's directors are unwilling to be deposed and **b)** this case should be stayed for risk of "broad discovery" threatening the secrecy of the Grand Jury investigation.

32. First, while the Claimant is sensitive to the Government's desire to depose one or more of the directors of Gold & Silver Reserve, Inc., the Claimant nevertheless notes that such depositions should not be deemed "necessary" for the Government to prove its case. Indeed, recognizing that **a)** neither § 1960 nor § 5330 requires proof of intent, **b)** the panoply of facts that the Claimant is willing to stipulate to, and **c)** the Government's December 16 search of the offices of Gold & Silver Reserve, Inc., it hardly seems reasonable for the Government to base its entire production on the words of the directors of Gold & Silver Reserve, Inc.

33. Furthermore, in this case, as previously noted, the Claimant does not wish to "pursue broad civil discovery."[4] The only evidence that the Claimant wishes to present to

---

[4] With all respect due to the Government, the Claimant no longer views the Grand Jury investigation as a source of information worth discovering. Upon information and belief, the Grand Jury investigation is being fueled by the testimonies of convicted carders and

8

*this* Court at *this* time is evidence concerning the Claimant's most basic business activities; such was the intent behind both of the proposed stipulations. With only those facts in hand, the Claimant is confident that this Court can and will dismiss the forfeiture complaint.

34. Moreover, it is ironic that the Government would allege that the Claimant might attempt to infringe on the Grand Jury's investigation when the Claimant has made no effort to so and the only time that this case and the Grand Jury investigation have invaded each other's provinces has been when the Government used the settlement negotiations in this case as a means to discover evidence in the Grand Jury investigation.

35. In conclusion, the Government's motion to stay marks the end of a three month process throughout which the Government exploited the forfeiture case as a means to discover evidence for the Grand Jury investigation. In the beginning of that process, the Government indicated **a)** its desire to stay the forfeiture case, but **b)** its desire to settle these cases with the Claimant if possible. Next, the parties met on July 5 in Washington, D.C. for what inevitably became a fruitless settlement conference. Following the conference, the Grand Jury subpoenaed a collection of documents the existence of which was revealed by undersigned counsel during the conference. Finally, undersigned counsel struggled to draft a stipulation which would somehow meet the Government's' impossible standards.

36. As such, it comes as no surprise that the Government is now moving to stay this case. Having gleaned all that it possibly could from the forfeiture case, the Government is now ready to lock away the Claimant's assets indefinitely and proceed to *another* forum and *another* court where the Government will yet again scurry away from actual arms-length litigation. While a stay would likely be appropriate if any of the 18 U.S.C. § 981(g) considerations were actually at issue, in this case, where the Government has previously executed a search warrant and the Claimant has no desire to jeopardize the

---

identity thieves, the identities of whom are already known by the Claimant. Further information concerning what might be taking place before the Grand Jury is, at this time, of no consequence to the very simple § 1960 issue. Such information may become worth pursuing when the Claimant enters into civil litigation against those carders and identity thieves for the damage that they levied upon the infrastructure of the e-gold system; however, such litigation has not yet ensued.

"secrecy" of the Grand Jury investigation, a stay would be unnecessary, unfair and patently inappropriate.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Claimant, GOLD & SILVER RESERVE, INC., respectfully requests that this Court enter and order denying the Plaintiff's motion for stay.

Respectfully submitted,

/s/ *Andrew S. Ittleman*
Mitchell S. Fuerst, Esq.
Florida Bar No. 264598
Andrew S. Ittleman, Esq.
Florida Bar No. 802441
Rodriguez O'Donnell Ross Fuerst
 Gonzalez Williams & England, P.C.
1001 Brickell Bay Drive, Suite 2002
Miami, FL  33131
305-350-5690 (o)
305-371-8989 (f)
Carlos Rodriguez, Esq.
District of Columbia Bar No. 935692
1211 Connecticut Ave. N.W., Suite 800
Washington, DC 20036
(202) 293-3300 (o)
(202) 293-3307 (f)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **CLAIMANT'S OBJECTION TO PLAINTIFF'S MOTION FOR STAY** was served on September 6, 2006 by email on Assistant United States Attorney Bill Cowden (william.cowden@usdoj.gov).

*/s/ Andrew S. Ittleman*
Mitchell S. Fuerst, Esq.
Florida Bar No. 264598
Andrew S. Ittleman, Esq.
Florida Bar No. 802441
Rodriguez O'Donnell Ross Fuerst
 Gonzalez Williams & England, P.C.
1001 Brickell Bay Drive, Suite 2002
Miami, FL  33131
(305) 350-5690 (o)
(305) 371-8989 (f)