IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-2497 (RMC) |
| | ) | ECF |
| v. | ) | |
| | ) | |
| ALL FUNDS ON DEPOSIT IN SUNTRUST ACCOUNT NUMBER XXXXXXXX8359, IN THE NAME OF GOLD AND SILVER RESERVE, INC., | ) ) ) ) | |
| | ) | |
| And | ) | |
| | ) | |
| ALL FUNDS ON DEPOSIT IN REGIONS BANK ACCOUNT NUMBER XX-XXXX-4851, IN THE NAME OF GOLD AND SILVER RESERVE, INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |
| Gold & Silver Reserve, Inc. d/b/a/ OmniPay, | ) ) | |
| Claimant. | ) ) | |

**PLAINTIFF'S REPLY TO CLAIMANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR A STAY**

Plaintiff, the United States of America, respectfully submits this Reply to "Claimant's Objection to Plaintiff's Motion for a Stay" (hereinafter, claimant's "Opposition").

**Background**

As claimant acknowledges, Government counsel called claimant's counsel on June 16, 2006 to request claimant's consent to a stay of the civil forfeiture case. We called in June to explain the need for a stay, and to ascertain whether claimant would consent to a stay, because, by June 16, 2006: (1) claimant was aware of the existence of an ongoing criminal investigation

into claimant's operations; (2) we were aware that claimant's counsel was almost invariably requesting more time to respond to requests for information in that investigation; (3) the demands of the criminal investigation meant that neither side had discussed, let alone proposed, any facts to which claimant might stipulate in order to crystalize dispositive legal issues for this Court, and we did not want claimant's counsel to shift focus away from responding to Grand Jury requests for information; (4) we were aware that Grand Jury investigations and putative defendants' rights should take precedence over civil litigation; (5) we expected that claimant's counsel would advise their client(s) not to participate in standard civil discovery, and we had become less optimistic that depositions could be avoid by claimant's willingness to stipulate to relevant facts that were had learned; (6) claimant's one-time argument that the seizure of the defendant funds was causing its business to "hemorrhage" had proved untrue and appeared to have been abandoned; and (7) disposition of the criminal investigation might render this case moot.

During the June 16, 2006 telephone call, claimant's counsel expressed reservation about staying this case. They asked the Government for time to consider whether claimant should join in the request for a stay, or formally oppose it. While claimant's formal position on a stay remained "under advisement," prosecutors and investigators agreed to meet with claimant's counsel, on July 5, 2006, so that claimant's counsel could present information or argument to the Government that claimant's counsel had indicated he wanted to share. Because the meeting was only weeks away, the Government decided to postpone moving for a stay to see whether, after the July 5th meeting, claimant would agree that a stay made sense. Inexplicably, claimant writes that the July meeting was intended as "an alternative to a stay of the forfeiture case." See claimant's Opposition at 6, ¶22. But, a stay would only have been unnecessary after July 5th if,

on July 5th, claimant's counsel convinced the Government to stop, and drop, its criminal investigation. We doubt that claimant's counsel seriously believes that the Government would drop its criminal investigation on July 5th, even while claimant was continuously delaying its responses to requests for information. Nevertheless, claimant sticks with that story now.

During the July 5th meeting, claimant's counsel expressed shock after the Government explained that it was concerned about money laundering within the e-gold system and that those who facilitate the transmission of criminal proceeds might be charged with money laundering. But, we were surprised that claimant's counsel even raised an eyebrow about the potential for criminal culpability at this point. At the initial scheduling conference for this case, claimant's counsel acknowledged his awareness of a Grand Jury investigation when the possibility that the civil case would need to be stayed was openly discussed. Furthermore, by July of 2006, the following events (among others) had transpired: (1) a December 2005 search warrant had been executed at the offices of G&SR; (2) a civil forfeiture case based on violations of criminal statutes had been filed; (3) a January 9, 2006 article describing the Government's concern about money laundering within the e-gold system had appeared in *Business Week*[1]; and (4) *Florida Today*[2] published a similar article, on February 27, 2006. We were dismayed that attorneys who

---

[1] In this one of several *Business Week* articles, the reporter wrote that "[l]aw enforcement officials worry that the little-known digital currency industry is becoming the money laundering machine of choice for cybercriminals. On the evening of Dec. 19, agents with the Federal Bureau of Investigation and Secret Service raided the Melbourne (Fla.) office of e-gold's parent company, Gold & Silver Reserve, Inc., and the nearby home of its founder, Douglas L. Jackson. . . . The Secret Service and the FBI declined to comment on the raid. Jackson has denied any wrongdoing, though the raid isn't the first indication that federal investigators view e-gold as a magnet for online misdeeds."

[2] The *Florida Today* article reported: "Jackson also is in the middle of a previously disclosed investigation led by the FBI and Secret Service to find out if he had knowledge of

had represented claimant for so long would profess surprise at the nature of the criminal investigation, and profess ignorance of the several ways that criminal proceeds moving through the e-gold system might violate Federal anti-money laundering statutes. We told claimant's counsel as much.

After the parties discussed that serious criminal charges were under investigation, we expected that it was unlikely that claimant's counsel would even propose to stipulate to facts that accurately described claimant's operations. Absent such facts, however, this Court would not have a complete picture of claimant's operations before trying to determine whether the defendant funds were forfeitable under 18 U.S.C. § 981. Thus, we called claimant's counsel again, on July 7th, to ascertain whether claimant now agreed with us that staying this case, so that claimant's counsel could focus attention on addressing the criminal investigation, would behoove everyone.

Instead, claimant's counsel asked us to delay filing the Motion for a Stay, again. This time, claimant asked for a short delay to prepare a set of stipulations that, claimant suggested, would obviate the need for a stay. Claimant's first proposals, which arrived on July 21st, proved useless. We identified concerns, and claimant asked for more time to draft more stipulations. We reviewed claimant's second proposals, which arrived on August 21st. Again, we identified deficiencies, including several that carried over from the first proposal.

After trying numerous times over the course of several weeks to secure claimant's consent to stay a civil case that claimant would not allow us to prove through evidence gleaned from its managing officials (*i.e.*, admissions), and at the same time aware that claimant's counsel

---

criminals using his gold-backed currency system to launder money or steal identities."

4

was objecting to a request that it produce business records in the related matter (see claimant's Opposition at 6, ¶21), we moved to stay this case.

## Analysis

Claimant filed a ten-page Opposition on September 6.  But in its Opposition claimant did not – even once – cite any legal authority that would support rejecting the Government's Motion for a Stay.  Nor did claimant dispute our concern that claimant's key witnesses would be advised not to submit to civil discovery should civil discovery proceed ahead of any resolution of the criminal investigation.  Nor did claimant even explain why it believes the Government should have been willing to stipulate to its hypotheticals.  Instead, claimant appears to be complaining that we fooled claimant's counsel into disclosing the existence of documents meant to remain secret.  In essence, claimant urges this Court to deny a stay because the Government did not request it sooner.  But claimant offers no alternative.

According to claimant, the Government "clearly premeditated' by delaying its Motion for a Stay in order to engage in informal civil discovery.  See claimant's Opposition at 5, ¶20.  Claimant alleges that through informal "discovery" the Government learned of the existence of additional business records that (assuming they exist) are responsive to a Grand jury investigation and that claimant's counsel chose to withhold.  But claimant's counsel did not disclose the existence of such documents by asserting an appropriate privilege and preparing a privilege log.  Rather, claimant's counsel volunteered the existence of such documents during the July 7th telephone that we initiated to ascertain whether claimant revised its "tentative" opposition to a stay after its counsel reported our concerns.

We did "meditate," if it can be called that, before filing the Motion for a Stay in August.

In fact, we were thinking about a stay in June when we called claimant to explain why we thought developments in the criminal investigation merited a stay here. We explained that we did not want this Court to be operating under the impression that this civil case was progressing toward a resolution of disputed material facts. But, we cannot comprehend how a properly supported motion for a stay could form the basis for a valid objection, or what "premeditated" is supposed to mean when it appears as part of claimant's persistent *ad hominum* attacks on opposing counsel. "Premeditation" does not provide a basis for asking the Court to deny a stay.

Claimant's complaint that it feels "strung along since July when counsel for the Government originally indicated his desire to move for a stay[,]" is remarkable. See claimant's Opposition at 5. Demonstrating an astrologer's devotion to creative imagination, claimant whines on page 5 (¶20) to "having been strung along since July" – after having acknowledged that the Government sought claimant's consent for a stay of this civil case *on June 16, 2006*. See claimant's Opposition at 3, ¶5. As we discussed above, the Government's Motion for a Stay was filed in August because *claimant's counsel asked for time* to consider its position and then, on several occasions, *asked for more time* to prepare stipulations that were misleading, incomplete, and presented as hypotheticals.

Furthering its habit for taking creative license with facts, claimant protests that the Government has "exploit[ed] this forfeiture case and the settlement negotiation process as means of discovery in the Grand Jury investigation." See claimant's Opposition at 6, ¶20. But there has been no "settlement negotiation process" in this case, let alone any improper discovery. The July 5th meeting to which claimant's counsel refers was not, as claimant would now have it be characterized, a "settlement conference." Meetings during which a putative defendant's counsel

6

seek to diminish potential criminal conduct are not unusual in criminal investigations, but characterizing such meetings as settlement conferences is novel.[3]

Claimant's counsel feigns confusion about the July 5th meeting, even though the Government indicated, before claimant's counsel left Miami, that criminal investigators from several agencies also would come to Washington to listen to what claimant's counsel might choose to discuss about money laundering within the e-gold system.  Moreover, at the outset of the July 5th meeting, prosecutors again highlighted the Government's money laundering concerns before explaining that the Government personnel in the room were prepared to listen to claimant's counsels' explanations or arguments.  See claimant's Opposition at 3, ¶7.  We also explained that the investigators did not need to hear claimant's counsel rehash its argument that claimant could not be charged with illegal money transmitting, or money laundering, merely because it did not directly accept its customers' cash.

Claimant's allegation that the Government's delay in moving for a stay of this case permitted the Government, through an informal civil discovery process, to discover evidence relevant to the criminal case, is more nonsense.  Claimant protests because a Grand Jury subpoena was issued for certain documents after claimant's counsel disclosed the existence of such documents during a July 7 phone conversation with the Government.  But, as we explained

---

[3] Claimant's pleadings highlight fundamental misconceptions about criminal proceedings and Federal forfeiture laws.  For example, claimant writes that we seek a stay in order to "to lock away the Claimant's assets indefinitely and proceed to *another* forum and *another* court where the Government will yet again scurry away from actual arms-length litigation.  See claimant's Opposition at 9, ¶36 (emphasis in original).  The Government has not sought an indefinite stay and it has not sought to shop, to another court, its criminal investigation.  Moreover, prosecutors do not initiate criminal cases because they fear the lesser burden applicable to civil litigation.  Criminal cases are brought if prosecutors are confident that they can prove misconduct beyond a reasonable doubt.

above, we called on July 7th to renew our effort to get agreement to a stay so that, among other things, civil discovery did not bump up against any particular individual's Fifth Amendment rights. We called after the July 5 meeting ended because, after claimant's counsel expressed surprise that money laundering allegations were being investigated, we though claimant's counsels' reservation about a stay might have been based on a misperception of reality. We certainly did not possess a psychic's prescience that claimant's counsel would volunteer that he was withholding business records relating to money laundering.[4] Claimant portrays the July 7 telephone call between counsel as an improper effort to use the civil discovery process to obtain criminal evidence. Not only is claimant's argument irrelevant to whether a civil stay is warranted, it is also a fantasy.

After complaining for pages that the Government concocted a clever scheme to delay a stay while it discovered the existence of secreted documents, claimant finally turns to a brief discussion of the propriety of a stay. Claimant objects "to the Government's motion because it is totally unnecessary." See claimant's Opposition at 6, ¶24. Claimant writes:

> in light of the fact that Fifth Amendment and 6(e) considerations abound in this case, a stipulation would undoubtedly be the most appropriate way for the parties to present evidence to this Court. The stipulation would allow the parties to amass evidence without causing any person under investigation to waive his Fifth Amendment rights, and would also allow the Government to preserve the secrecy of the Grand jury investigation.

See claimant's Opposition at 8, ¶30. But the stipulations claimant proposed were intended to ensure that the Government *did not amass* useful evidence. Indeed, claimant's preference for

---

[4] Claimant's counsel appears to believe that they decide whether "the Grand Jury investigation [i]s a source of information worth discovering." See claimant's Opposition at 8, n.4.

opacity, which was discernable from the proposals claimant submitted, now has been admitted. According to claimant:

> The only evidence that the Claimant wishes to present to *this* Court at *this* time is evidence concerning the Claimant's <u>most basic</u> business activities; such was the intent behind both of the proposed stipulations. With only those facts in hand, the Claimant is confident that this Court can and will dismiss the forfeiture complaint.

<u>See</u> claimant's Opposition at 8-9, ¶33 (italics in original, underscore added). Claimant admits that its proposed stipulations were never intended to describe the scope of the activity that it knows occurs over its system – only some "basic business activities" that claimant crafted in a deliberate effort to avoid allowing this Court to see, and thus rule upon, a true picture of claimant's operations. Not only were claimant's proposals incomplete, claimant offered hypotheticals, not facts. Hypothetical facts produce only hypothetical opinions. Claimant wants to be deemed independent of third-parties who, it assumes, would choose only to use its network to enable legitimate payments for legitimate purchases. But claimant knows that the system it operates is a haven for those who seek to transfer illicit funds. <u>See</u>, <u>e.g.</u> claimants Opposition at 8, n.4 (acknowledging claimant's awareness of use "of the infrastructure of the e-gold system" by "carders and identity thieves").

Claimant has maintained that it cannot be found liable for having violated any one of the three prongs of 18 U.S.C. § 1960, even though it did not register with any State or with the Federal Government, and regardless of whether it knew funds transmitted were derived from a criminal offense or destined for one – merely because Omnipay does not accept cash for deposit into its bank accounts. Claimant says it wants the Court to decide whether a loophole in Section

1960 exists, but claimant refuses to agree, notwithstanding what it proclaims to customers on the websites it operates, that it facilitates the transmission of funds. Indeed, at one point in our discussions of proposed stipulations, claimant's counsel indicated that his client might not be prepared to stipulate that funds transferred by wire constitute transfers of "something of value."

Claimant concedes that "a stay would likely be appropriate if any of the 18 U.S.C. § 981(g) considerations were actually at issue[.]" But, claimant ignores a discussion of the law governing civil stays, instead pasting into its Opposition the same objection it asserted to producing business records. The parties cannot agree on material facts if claimant strives to hide evidence and bickers over commonly understood language. We understand that while the criminal investigation continues, individuals from whom we might secure truthful answers to straightforward questions will be advised to keep quiet. The criminal case is not never-ending; the issues this case presents are not being ignored.

Apparently, claimant's solution here would be to postpone the stay, again, and to allow claimant another chance to "struggle[] to draft a stipulation which would somehow meet the Government's impossible standards." See claimant's Opposition at 9, ¶35. Claimant has struggled to avoid revealing the facts. Telling the truth is not impossible.

## Conclusion

After first denying almost every allegation in the Complaint, and then "struggling" for weeks to come up with a page of innocuous verbiage that, it says, was deliberately incomplete, claimant offers no reasonable alternative to sworn testimony. Claimant has failed to provide this Court with any basis for rejecting a six-month stay while the criminal investigation moves

forward. Thus, the Government's Motion for a Stay should be granted.

                                                Respectfully submitted,

                                                _/s/_____
                                                KENNETH L. WAINSTEIN, DC Bar #451058
                                                United States Attorney

                                                _/s/_____
                                                WILLIAM R. COWDEN, DC Bar # 426301
                                                LAUREL LOOMIS RIMON
                                                Assistant United States Attorneys
                                                U.S. Attorney's Office, District of Columbia
                                                555 Fourth Street, N.W., Washington, D.C. 20530
                                                (202) 307-0258

                                                _/s/_____
                                                KIMBERLY KIEFER PERETTI, DC Bar #458726
                                                Senior Counsel
                                                U.S. Department of Justice, Criminal Division
                                                Computer Crime and Intellectual Property Section
                                                1301 New York Ave., NW, Suite 600
                                                Washington, D.C. 20530
                                                (202) 353-4249

## CERTIFICATE OF SERVICE

       I hereby certify that I caused a copy of the foregoing Plaintiff's Reply to Claimant's Opposition to Plaintiff's Motion for a Stay to be served by means of the Court's ECF system on this 15th day of September 2006 upon claimant's counsel of record.

Mitchell S. Fuerst, Esq.
Andrew S. Ittleman, Esq.
Rodriquez O'Donnel Ross Fuerst
  Gonzalez Williams & England, P.C.
1001 Brickell Bay Drive, Suite 2002
Miami, FL 33131

                                                _/s/_____
                                                William R. Cowden